The last case on the call this morning is number 121668 Herndon v. Whiteside, agenda number 14. Counselor, are you ready? Yes. And are you? Yes. You may proceed. Your Honor, my name is David Foreman. I represent Lisa Whiteside as the defendant in this case. And this case is probably a rare bird for this court. It involves oil and gas. But on another level, this case is really a real estate case involving conveyances of interest in real estate. It's a pretty simple case from that perspective. When you sell someone something and you sell all your interest, it includes everything. The term all is unambiguous. It's pretty straightforward and pretty clear. The only thing that is perhaps a little complicated is the context in which this case appears, being oil and gas, and you need to know a little bit about the underlying context in order to appreciate and understand some of the terminology involved. In this case, we have no disputed fact. We have a situation where a landowner enters into an oil and gas lease with the plaintiff, which is Exhibit 1, which appears in the appendix at page 30. And this lease grants to the lessee the exclusive right to come onto the property to prospect for oil and gas purposes. Now, the one thing that's a little different about oil and gas than other interests in real estate is you don't really own it. We talk about the bundle of rights theory of real estate ownership. We have a bundle of these rights. And from that bundle, we take the mineral rights. Well, with respect to oil and gas, unlike hard minerals, oil and gas move. They migrate when you change the pressure in production. So you don't really own oil and gas under your property the way you own gravel or sand or soil. What you own is the exclusive right to prospect for that and the right to try to attempt to capture it. And if you successfully capture it, then you own the oil that you've captured. Now, an oil and gas lease is an agreement where the mineral owner or landowner grants the exclusive right to the lessee to come onto the property for prospecting purposes. And you can see that appears in the first paragraph of the oil and gas lease. So the plaintiff obtains the lease. Now, what that lease does is it divides those bundle of rights, mineral rights, into two parts. One part is royalty. That is the landowner's share. The mineral owner is entitled to one-eighth of all oil and gas produced free and clear of all expenses. The lessee's share is called the working interest, and it must bear all the expenses of exploration and development. Typically, we see the royalty historically in Illinois is one-eighth, as it is in this case. You'll see on page two of the lease, under royalties, 12.5% goes to the mineral owner. That's their royalty. The working interest is the remaining seven eighths. Now, that is exhibit one. Then, in this case, the plaintiff assigns that working interest via exhibit two, which appears on page 34 of the appendix. And it assigns this working interest over here. It divvies it up amongst three other investors as well as itself. And what it does is it is a partial assignment. It assigns to Heddington, Focus, and Baywater certain percentages of that working interest. Namely, it assigns 75% of the working interest. Plaintiff kept 25. But then, you will see that also in paragraph three, Asinor accepts from this assignment and reserves it to Asinor in overriding royalty interest. So, they've taken that working interest, divvied it up amongst four working interest owners, cost-bearing owners, and then there is another interest, which is the overriding royalty, reserved unto the plaintiff when they made this conveyance. So, in other words, the plaintiff is saying, I'm bringing in three other people to the deal. I'm keeping 25% of the working interest, and I'm going to pay my share of that. They're going to pay the other 75%, and I'm going to slice a little part of this off the top for myself as an override. It's non-cost-bearing. In addition to that, there was another co-defendant who's not here today, John Bassanet. There had been an assignment to him, a third party, of an overriding royalty interest to the 32nd. So, we have the royalty interest. We have the five interests created under this partial assignment of an overriding royalty, four working interest, and then we have an override on Mr. Bassanet's. We have seven owners of the oil produced from this file. Now we get to the part that is the focus of our case. There is then Plaintiff's Exhibit 3, which is the assignment to my client, and is the construction of this document, which is the focus of our appeal. Can I ask you a factual question, Ms. Foreman? Sure. When you talk, the parties talk about ambiguity and the document being construed against the draftsman, and now that you're getting into documents here, I just want to know, is the record clear who affirmatively did draft the document at issue? It should be because when you record a legal instrument, whoever prepared it, it's supposed to be on there, or they're not supposed to record it. In this case, they didn't. Fortunately for me, that issue does not matter, because in the law of real estate conveyancing, all interests are presumed conveyed unless they're clearly and unambiguously accepted, which leads to the rule that in any real estate conveyance, the conveyance is construed in favor of the grantee and against the grantor. It is the grantor's obligation to define an exclusion in clear and unambiguous terms. That presumption is the point upon which this entire case pivots, and I think you hit it right on the head. As far as who drafted it, Your Honor, it's not in the record. My belief is plaintiff drafted it, but that is immaterial because the rule remains the same. It is construed in favor of the assignee, not the assinore. Now, we get to this document. Okay, so here again we have all of our working interest owners and Mr. Herman assigned all of assinore's right title and interest in the leases. All. All interest in the personal property and equipment associated with the leases. We get to page 2. All production after the effective date belongs to my client. Now, one thing that you should know is oil and gas is part of the real estate until it is produced. The moment it is captured and reduced to possession, it becomes personal property. And the owners of the mineral interest, oil and gas rights, own the resulting oil and gas that is produced in the same proportions. So, the assignment covers the personal property and equipment affiliated with the well and the oil that is produced afterwards. So, it says all right title and interest that we have, all personal property and equipment, and all production. And it also says all rights. Now, the document has a granting clause in paragraph 1. As I said, all of assinore's right title and interest. Seems pretty simple, pretty clear. These documents are exchanged by ordinary folks. Not highly trained, skilled intellectual people such as your honors. Ordinary common sense people in everyday life. All means everything. It's the whole works, the whole shooting match. We have all four working interest owners conveying all interest that they all four collectively own to plaintiffs. So, when we're done with that conveyance, what we have left is the overriding royalty that existed on behalf of the lessor. Because the lessor is not a party to this instrument. We have the overriding royalty that belonged to Mr. Bassnett because he's not a party to this instrument. And then everything else is owned by the defendant. It's your contention that because, get the name right here, Ramsey Herndon was one of the assinores that included not only his working interest, but also his overriding royalty interest that he had retained when he made the conveyance to the three other individuals. Precisely. Precisely, because it gives an interest in a lease. The overriding royalty is an interest in a lease. And when you convey all interest in that lease, it comes with it. And obviously, we knew how to reserve and accept because he did it in the instrument before. Reserving and accepting. There's no reserving and accepting after this grant. What we have is a long disclaimer of liability following the grant, an assumption of plugging liability, an indemnity provision, a statement that says that all oil in the tanks belongs to the assinore, all production subsequent belongs to assinee, that assinee agrees to assume and be bound by and subject to assinore's obligations, assumes rights, obligations, and liabilities with respect to the oil and gas properties. And just by the way, the appellate court, in their opinion, says you can assume a duty, but not a right. That is one of the cornerstone principles that the appellate court's decision is based on. I don't know how they get there. They just ignore this language and say, well, people talk about typically when they assume things, they assume duties, not rights. That's not what this says. But in this case, we get to the subject provision. Assinee's interest in the oil and gas properties shall bear a proportionate share of the royalty interest. Remember the lessor's royalty interest? Overriding royalty interest in other payments measured after production. Overriding royalty interest is Mr. Bassinet's interest. This is simply a notification or a disclaimer, like you see in deeds that says this conveyance is made subject to taxes, easements of record, things of that nature. Those are rights of third parties, and this is a heads-up provision that it says, look, the interest we're assigning to you is subject to the rights of these other third parties. Namely, the lessor's royalty interest. I'm looking at the appellate court opinion here. It says the assumption provision, which specifically addresses overriding royalties, modifies or qualifies the earlier general grant. And is your problem with the appellate court not that they made that statement, but how they interpret how it modified it? Is that where you're at? It doesn't modify it, Your Honor. It does not modify it. We're talking about two different things. If you want to reserve or accept something from the grant, you say reserving or accepting. Or you say it is the assignee or is it the tenant that this not include an override that was previously reserved by the Asinorin document, so forth. So we're kind of talking apples and oranges. The problem is they seized on the word override and said, well, he had an override. Well, yeah, he did, and that override still exists. That's one of the problems with the appellate court's decision is they seem to think that I'm arguing that override kind of disappears into thin air after this conveyance. No, it doesn't. That override was there. When they assigned it to us, we keep it. My client owns it. That specific overriding royalty interest is still there. It's non-cost bearing. She just owns it. You sold it to her. That's what she paid for. When you buy something and somebody says, I'm going to withhold something from the grant in the context of real estate, they have to say so in clear and unambiguous terms. Is it important in this case that we differentiate between a deed and a contract? Between a deed and an assignment? And a contract. Well, Your Honor, I'm not sure I'm following you. A contract does not affect real estate and there's different rules applied to construction of contracts than apply to construction of deeds. A deed is a particular type of instrument of legal agreement. A deed is signed by the grantor, not the grantee. It is unilateral. The appellate court did say or relied on rules of contract construction in reaching its decision. That's a mistake. Is this assignment a contract? No, it is not. Is it signed by the assignee? It is not signed by the assignee. And that is one of the flaws in the appellate court's decision. I mean, at some point they said, I conceded that this burden still exists. And I think they misunderstood when I made the point earlier that, yeah, the override still exists. I don't deny that. It's still there. I mean, it's just that it got conveyed to my client. And we've heard your argument with respect to what the language actually says. Can you tell us why the plaintiff grantor would have intended what that language said? Which language? The language that you've been stating to make your position as to what occurred here. Is there a reason outside? Sure. I know we look at the language, right? But why would the grantor have put this language at issue? Because they're making reference to the fact that there is an overriding royalty owned by Mr. John Bassanet that is not being transferred here and that the working interest is going to have to bear that because his interest is non-cost-bearing, just like the lessor's interest is non-cost-bearing. Honestly, Your Honor, this provision is simply an expression of what the common law is, whether it's in there or not. When you step into the shoes of the ass and oar, you step into their shoes, good, bad, and ugly, rights and duties. So you're stepping into the exact same shoes that these four entities collectively have, including the right to the overriding. So, yes, it has sense. But if you read this as an exception, it doesn't make sense because why the plaintiff never owned the royalty, right? That was carved out by the police. The plaintiff never owns the royalty. What sense does it make to accept something you never owned in the first place? If you read that as an exception, then the word royalty really doesn't make any sense. When you construe it the way I do, the defendant succeeds to all rights of the plaintiff and all duties of the plaintiff, including the duties of the John Bass Net override and the duties to abide by the lease and the duties to pay the lessor's royalty. The appellate court talks about there being some inherent tension in this argument. There's no tension. That override is a right. It's an interest in an oil and gas lease. You conveyed it to us. You used the word all. It's included in the grant. If you don't want something to be included in the grant, then you just say so. It's pretty simple. You did it in the Exhibit No. 2. You say, accept the override that I previously created by instrument, thus and so. In this particular case, we have all interest, all personal property, all the oil produced. This grant could not be more all-encompassing. It includes everything, every interest owned by every ass and oar. And the only thing it leaves behind is the interest those people did not own. And that's what this paragraph is intended to do. It's no coincidence that this paragraph's at the end of the document. It's not up here. It's not over here on page 1 with the grant. Now, where it appears in the argument or in the document is not a litmus test, but I think it is significant. I see my time is up. Thank you, Your Honor. Thank you. Mr. Gottman. Good morning. May it please the Court, my name is Mark Gottman, and I represent the plaintiff in this case, Ramsey Herndon, LLC. Based on the arguments made in defendant's filings and the arguments repeated this morning by Mr. Foreman, I think it's important to realize what this case is not about. We're not dealing with an innocent purchaser of crude oil that is being asked to pay twice for the oil when they had no awareness of a third-party claim that they had no knowledge of the actual construction. We're not talking about the situation. We're looking at a situation, a contract situation, between two entities engaged in the oil business. You refer to this as a contract. It is not signed by the S&E. Is that correct? That is correct. But under that assignment, they agreed to certain... Are deeds signed by the grantees or the contracts? Deeds are typically not signed by the grantee. They're signed by the grantor. But what this is is a relationship between two parties, and we submit it's a contractual relationship. And when you keep that in mind, that limited scope, we think that when this case is properly decided on that contract basis, a lot of the concerns raised by the defendant as to the catastrophic effects of this ruling on the oil industry in Illinois and in real estate in general go away. It could be a very limited ruling based on these two parties that had priority with each other. And this court, as long ago in the O'Donnell case, which is a 1925 case, has said that assignments involving oil and gas leases are governed by normal contract law. As O'Donnell... You say this won't have an effect, but in all deeds, if there's a grant and then there's a subject to it at the end, real estate taxes, easements, however obtained, visible easements, whatever that standard language is, and if in all assignments there's this type of language, doesn't it affect all of those? Well, I think we will show that whether this is interpreted under contract law or under deed law, the result is the same. So whenever there's a subject to in a deed that will change what the granting clause says. Well, there and there, yeah, the old established rules, if it's repugnant to the grant, it fails. And I think the same thing will be in this case. In this society, which is a contract, if the restrictions or subsequent limitations or provisions are subject to or repugnant to the grant, then it would fail. But I think they're not repugnant as we will show. So your position is it doesn't make any difference whether we construe this overriding royalty interest as an interest in real estate or personal property? Is that what you're saying? That's correct. Whether you use contract law or real property law in this case because the defendant's position is that under real property, this fails because this reservation is repugnant to the grant and can't be reconciled, so it fails. But even that, the reservation is not repugnant to the grant because what was assigned was 100% of the working interest, which we're not challenging. That was assigned. The defendant has 100% of the working interest. What is out there are these other things that are not part of the working interest, these landowners' royalty and the overriding royalties. They're not part of the working interest. So making them subject to that is not an impingement or a reduction of the grant of 100% of the working interest. So it is not repugnant to it, even under real property law. So by your analysis, this comes down to whether, in the document, all means all? In that document, all means all with respect to the working interest, which was all that the plaintiff acquired in the original oil and gas lease. They acquired a working interest. That's what is acquired in an oil and gas lease. Overriding royalties are not created under an oil and gas lease. We cited the Williams v. Ohio Fourth District case. They are separately created by the holder of the working interest and a third party by contract. So they are not part of the lease. They're not part of the working interest. They're a separate entity unto itself created by contract. Mr. Cochran, then, is there any language in the assignment to the defendant that explicitly accepts or reserves the overriding royalty to the plaintiff? Yes, in the assignment. Assigning does hereby agree to assume, be bound by, and subject to each assigner's expressed and implied covenants and rights. The plaintiff was one of the assigners. One of his rights he had was an overriding royalty interest. So this provides that the assigning defendant specifically agreed to be assumed, be bound by, and subject to that overriding royalty interest. Furthermore, they agreed to bear the proportionate share of that overriding. It doesn't say that it reserves the overriding royalty to the plaintiff. It just says all rights. Well, it wouldn't reserve it because it's already been created. The plaintiff already owns the overriding. It was created in his assignment back in 2007. He owns that overriding. This document is not creating a new overriding. It's merely acknowledging that the defendant, as the assignee under this, is agreeing to be bound by all those rights, which include plaintiff's rights and overriding royalty interest. It goes on to specifically say, I, the defendant, agree to bear my proportionate share of those overrides, which would be plaintiff's overriding royalty interest, which was separately created under the original oil and gas lease. In this court, in a series of cases, I think it's the Harley 1941 case, the Wallers 1948, and the Frye 1954 case, have said specifically that where an assignment reserves or accepts an overriding royalty interest, that is a qualification on what is conveyed. And that's exactly the situation we have here. But it wasn't articulated, was it? Sorry? In the document? Well, that's what that language means to me, where the defendant, as the assignee, agrees to be bound by these rights, which include a right to an overriding royalty interest. They're agreeing to be bound by that. Furthermore, they're agreeing to pay their proportionate share. In this case, they'd be paying all of it because they've acquired 100% of the working interest. In the Hardy case of 1941, in the granting clause, it specifically said accept one-sixteenth of the oil and minerals produced. It granted conveys and warrants, and then it describes the 40-acre tract, but it says accept the one-sixteenth. So it appears in that granting clause that it is accepted, which is different from the assignment you have here, is it not? Is this a case of mutual mistake under contract law? Did the defendant actually pay for the value of the overriding royalties? I mean, did the defendant believe that they were paying for that value? There's absolutely nothing in the record to reflect anything with respect to mistake or what the consideration was paid for this assignment. So I think the documents have to speak for themselves under their clear language. I guess I'll kind of jump to the end here based on the dialogue here. I think one of the important considerations in this case that can't be overlooked is the element of fraud. We all know under the normal parole evidence rule, you can't introduce extraneous evidence as to the meaning of contracts. But I think in this case, the record clearly establishes a pretty compelling case for fraud, in that the defendant took her assignment of this oil and gas lease in the middle of its original three-year term. Immediately after that, she grants this overriding royalty interest to her co-defendant, Bazineth. Then, despite the fact there's an operating, had been producing well, there's no production out of this property until April of 2010, the month after the original three-year term expired. How does that factor into the interpretation of this assignment? I think it shows a pattern of fraud which under the court's cases can be... But the assignment was signed by the assignors, whoever prepared it. So how does that factor into whatever happened with regard to production or non-production? I think it shows the defendant's understanding of what the provisions, the documents she was party to required. They required her to pay this overriding. And the way to avoid that was to not produce until after the original term had expired, which happened. And immediately thereafter, production starts. Coupled with that, she executes a new lease with a landowner under the same terms, which would have been totally unnecessary because of the production clause. The original lease continued and enforced because of the production. Then, when she doesn't pay any overrides after this production starts, either her co-defendant, Bazineth, ordered the claim. It's only when Bazineth raises a fuss that she enters into a new overriding interest agreement with Bazineth. This wouldn't have been necessary. The original lease continued. The original override granted to Bazineth was still valid, but she enters into a new one. I think the only logical inference is she's trying to avoid the appearance that the original lease is still under play. When plaintiff finds out... Is this all of record, counsel? Is this all of record? Yes. Yes. And it's in brief to this court. It's in brief to the appellate court. Then when... Was this an issue in the trial court? The trial court never got to this. I mean, it looked at... So did the appellate court look at that? It was raised at the appellate court, this fraud issue. Just as you're raising it here. Right. Which I think it can come in to show... The purpose is showing defendant's understanding of what these agreements entail. And the only rational explanation... Again, though, it's not in the trial court record, right? It was raised in briefing. Well, what's in the trial court record are all these documents. The original lease, the assignment to defendant during the term of that original lease, the creation of the override to BASNAT. This is all in the record. The new lease that was entered into by defendant after the original lease expired and production resumed. The new overriding royalty interest that was granted to BASNAT after the original lease term expired. Those are all in the record as documents. And there is the affidavit of BASNAT going through and explaining this and how he had to challenge defendant to get his override rights. And as a result, a new override agreement was entered into. That's all in the record. And I think it's very telling. This is showing what the defendant, how she interpreted these documents in the same way that we are interpreting them. That that override, the original override to the plaintiff was still viable and that she agreed to honor that in the assignment to her. And to your earlier question, there's absolutely nothing in the record to indicate who did not draft these documents. With that being said, unless there are any further questions, we would request that this court require defendant to honor the commitments she made, which were to abide by the overrides. There's no distinction in the documents. It's override held by a third party. The plaintiff had a valid overriding royalty interest under the original lease that continued because of the ongoing production. That original lease is still in place. Defendant agreed in that assignment to abide by that. We would ask the court to require the defendant to do so by upholding the appellate court's position. Thank you. Seeing no questions, thank you, Mr. Cochran. Reply. Thank you. I would like to kind of reel this back into the issues that are in front of the court. This case we decided on a motion pursuant to 2-615 because the document which the plaintiff attached to their complaint defeated their cause of action. It's self-defeating. All this business about fraud and everything is not in the record. This case, I filed a motion that says, you can't be defrauded of something you don't own. The document you attached to your complaint conveyed the interest that you're claiming to my client. There is no case here. Now, there was a very important point brought out, and Mr. Cochran said, well, this doesn't involve overrides. It just involves working interest. Well, that's not what it says. It doesn't say all working interest. If it said all working interest, I wouldn't be here. All right? It says all interest. Now, an override is an interest in an oil and gas case, so it's included with the term all. They could have said, if they would have said all working interest, then it wouldn't have included the override. If they would have said all interest except the override, or we do not intend this to cover the override. That's not what they did, and that's not what the document says. There's three arguments. My position on this is, one, this is clear and unambiguous. All means all. It's pretty simple. Even if the term could be stretched as ambiguous, the law requires that ambiguity be resolved in favor of my client, not their client. Third, the rule of law is you can't have a subsequent clause, an intentions clause in an instrument that is repugnant to the grant. It is inconsistent with it. So it's kind of a belt suspenders and then some argument. But the dissent of the appellate court's opinion really did a nice job, I think, and really kind of summarized the points. And I think what brought us here today is the telling. That's what that language means to plaintiff's attorney. That's what it means to me, is what he said. But that's not what it means to the rest of the world. This case, it is more than just oil and gas fraud. It is a conveyancing case. It is a case that involves just any instrument that affects real estate where you have the subsequent clause that says it's subject to something. Mr. Cocker mentioned that he's not after a first purchaser. Well, first purchasers examine title. Their argument was, in the appellate court, was that this is not an interest in real estate. Now, if it's not an interest in real estate, then why is it recorded? I mean, I think that argument is specious. It just is. Payment is based upon examination of title in the county where the will is located. And you look at these instruments and you examine them and you make a determination as to who owns what. My client didn't make that determination. All right? She did receive the money. There's no dispute that she received the money attributable to this override that she bought. And there's no dispute that the plaintiff did not get that money. The dispute is they say, well, we kept it. And we say, no, you didn't. And this whole issue of all this, there's another lease and all that, we don't get there. Because that's irrelevant. Whatever interest there was under that lease, you assigned it to us, including your override. This language that you're looking at down here is simply referring to the overriding, the royalty. The interest being invaded is subject to the royalty and it's subject to the override of Mr. Bassanet. It is not an exception from the grant. I mean, this is a point which seems to me to be so obvious and patent that it's actually kind of difficult to explain. Because, frankly, you either get it or you don't. To me, it is pretty simple. We have no dispute of fact. You conveyed all interest. You left nothing. Everything you own, just like a quick claim. The trial court got it right. They said it's like a quick claim deed. Yeah, it is. You're conveying without warranty, but you're conveying everything. For all four owners that joined, including that override. And I think that Justice Pope, in the dissent, really summarized the position rather well. And pointed out that the appellate courts somehow saying that you assume rights, but not duties. Or assume duties, but not rights. I got that backwards. I mean, I don't know where some, how do you respond to that? I mean, it just doesn't make any common or legal sense. The document itself controls. It speaks for itself. We don't have to go beyond the four corners of this instrument to resolve this matter. Now, on behalf of the defendant, I would respectfully request that the appellate court's decision be reversed and that the trial court's decision be reinstated. Thank you. Thank you. Case number 121668, Herndon v. Whiteside, will be taken under advisement as agenda number 14. Mr. Foreman, Mr. Cochran, we thank you for your arguments this morning. You are excused. Martial of the Supreme Court stands adjourned until 9 o'clock a.m. tomorrow morning.